# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

———————————

### No. 201600163

———————————

### UNITED STATES OF AMERICA
Appellee

v.

### MARIANO C. VERA
Corporal (E-4), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Michael D. Zimmerman, USMC.
Convening Authority: Commanding General, I MEF, Camp
Pendleton, CA.
Staff Judge Advocate's Recommendation: Lieutenant Colonel Daniel
R. Kazmier, USMC; Addendum: Lieutenant Colonel Daniel P.
Harvey, USMC.
For Appellant: Lieutenant Doug Ottenwess, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant Megan P. Marinos, JAGC, USN.

———————————

Decided 30 March 2017

———————————

Before MARKS, FULTON, and JONES, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited
as persuasive authority under NMCCA Rule of Practice and
Procedure 18.2.**

———————————

JONES, Judge:

At a general court-martial, members with enlisted representation
convicted the appellant, contrary to his pleas, of two specifications of sexual
assault in violation of Article 120, Uniform Code of Military Justice (UCMJ),
10 U.S.C. § 920. The military judge properly found the two specifications

were charged as contingencies of proof, arising from the same *actus reus*. He consolidated the guilty findings into one specification for purposes of both findings and sentencing pursuant to *United States v. Elespuru*, 73 M.J. 326 (C.A.A.F. 2014) and *United States v. Thomas*, 74 M.J. 563 (N-M. Ct. Crim. App. 2014). The convening authority (CA) approved the adjudged sentence of six months' confinement, three months' hard labor without confinement, forfeiture of all pay and allowances, reduction to pay grade E-1, and a bad-conduct discharge.

The appellant raises two assignments of error (AOEs): (1) the military judge erred when he instructed the members that "[i]f, based upon your consideration of the evidence, you are firmly convinced that the accused is guilty of the crime charged, you must find him guilty;"[1] and (2) the findings were legally and factually insufficient to sustain the conviction. The first AOE has recently been resolved by our superior court against the appellant.[2] We disagree with the second AOE and, finding no error materially prejudicial to the substantial rights of the appellant, affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

On 29 June 2013, Mr. and Mrs. S hosted a get-together at their home. They invited the appellant, Sergeant (Sgt) C, and BK[3] (a twenty-year-old former high school friend of Mrs. S). At the time, Mr. S was an active-duty Marine serving in the same platoon as his friend, the appellant. By the time of trial, he was a civilian. Mr. S purchased various alcoholic beverages, and all of the adults, with the exception of Mrs. S, spent the evening drinking a substantial amount of alcohol and playing various drinking games. Mrs. S took care of the couple's six-month-old child, and drank little, if any, alcohol that day.

Sometime during the afternoon or early evening, Sgt C and BK went to a room together and were observed by the appellant and Mr. S having sex. Later in the evening, after more drinking games, BK became quite drunk. Mrs. S physically assisted BK to a spare room, put her on an air mattress and covered her up. Mrs. S then left the room and told Sgt C and the appellant to

---

[1] Record at 485.

[2] The Court of Appeals for the Armed Forces found no error in the use of the same challenged instruction in *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017), and in accordance with that holding, we summarily reject the appellant's AOE here. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

[3] In June 2013, BK was on active duty in the Air Force. At the time of trial, she was no longer on active duty and was addressed as a civilian.

"leave her alone"[4] because BK was "highly intoxicated, and she was done for the night."[5]

At this point, the accounts of what occurred diverge. According to Mrs. S, after she went to bed, she was awakened by a moaning "sexual noise coming from a male."[6] She told her husband to investigate. Mr. S testified that he entered the spare room to find the appellant on top of BK appearing to have sex with her. He tried to pull the appellant off of BK but the appellant fought him. Mrs. S testified that when she entered the room, she pushed the appellant to try to get him to stop having sex with BK, and the appellant also pushed her back. Eventually, Mr. S was able to get the appellant off of BK and out of the room. During this entire interaction, BK lay flat on her back, not moving or responding to anything.

According to the appellant, BK flirted with him that evening and kissed him on the cheek. He testified this was followed by a consensual sexual threesome with BK and Sgt C—initiated by Sgt C—which included various sexual acts among the participants with the exception of sexual intercourse, due to the appellant's inability to maintain an erection. He testified the consensual sexual activity stopped only when Mr. and Mrs. S entered the room. The appellant stated he never saw BK unconscious, slurring her words, or intoxicated to the point where she was unaware of her surroundings.

BK testified that she had no memory of any events after the second drinking game. She stated she woke up the next morning on an air mattress in the spare room, with no clothes on and a blanket covering her. She reported the incident to the authorities six months later.

## II. DISCUSSION

The appellant argues the evidence was legally and factually insufficient to convict him because "[t]he three key witnesses to the alleged incident, [Mr. S, Mrs. S] and [the appellant], testified to a vastly different version of events, frequently contradicting one another," and there was "no physical evidence to support the allegations" of sexual intercourse.[7] We disagree.

We review questions of legal and factual sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the

---

[4] Record at 429.

[5] *Id.*

[6] *Id.* at 318.

[7] Appellant's Brief of 11 Oct 2016 at 10.

essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether, "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd on other grounds*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. While this is a high standard, the phrase "beyond a reasonable doubt" does not "mean the evidence must be free from conflict." *Rankin,* 63 M.J. at 557 (citation omitted).

The appellant was convicted of committing a sexual act upon BK while she was incapable of consenting and by causing bodily harm. To sustain a conviction for sexual assault under the incapable-of-consent theory, the prosecution was required to prove: (1) the appellant committed a sexual act upon BK; and (2) BK was incapable of consenting to the sexual act due to impairment by an intoxicant. Art. 120(b)(3), UCMJ.[8] To sustain a conviction for sexual assault under the bodily harm theory, the prosecution was required to prove: (1) the appellant committed a sexual act upon BK; (2) the appellant did so by causing bodily harm to BK; and (3) the appellant did so without the consent of BK. Art. 120(b)(1)(B), (g)(3), UCMJ.[9]

The appellant committed a sexual act upon BK by penetrating her vulva with his penis. When Mr. and Mrs. S entered the spare room, they both saw the appellant on top of BK having sex with her. Mr. S testified that the appellant was engaged in a sexual act, but he did not actually see the penetration.[10] However, Mrs. S actually observed the appellant's penis

---

[8] *See* Military Judges' Benchbook, Department of the Army Pamphlet 27-9 at 3-45-14 (10 Sep 2014).

[9] *Id.*

[10] Record at 270. At trial, Mr. S testified that he "technically never did see a penis penetrate a vagina." *Id.* But he admitted that he knew what was going on (sexual intercourse) when he saw the appellant on top of BK. *Id.* at 271.

penetrating BK's vulva. This is strong evidence, even without physical evidence to corroborate it.

BK was incapable of consenting to the sexual act due to impairment by alcohol. Prior to that day, BK, who was underage, testified that she had rarely drunk alcohol. When asked to compare her consumption of alcohol on that day with her previous experiences, she stated that on this occasion, she drank "[m]uch more, significantly more."[11] She confirmed she was "pretty intoxicated" and felt "[d]izziness, lightheadedness, [and had a] loss of memory."[12] Both Mr. and Mrs. S testified that BK became very drunk. Mr. S described BK as being "pretty hammered,"[13] and an "8 or 9"[14] out of 10 on a scale of drunkenness. Mrs. S described BK as being incoherent, barely able to walk, and "definitely the most intoxicated"[15] of the people drinking. Mrs. S was so concerned about BK's welfare that, after physically assisting BK to the spare room, she warned the appellant to leave her alone because BK was so drunk. Most importantly, during the entire time Mr. and Mrs. S tried to pull the appellant off of BK, she remained flat on her back and unresponsive to the commotion. She "looked like she was sleeping, passed out,"[16] and like a "dead fish."[17] BK did not consent to sex with the appellant at any time that evening and her impairment rendered her incapable of consenting.[18]

We reject the appellant's testimony of his consensual threesome with Sgt C and a lucid BK, as it is uncorroborated and directly contradicted by the testimony of Mr. and Mrs. S. First, there was no evidence to corroborate the appellant's assertion that BK flirted with him. Second, when Mr. and Mrs. S struggled to pull the appellant off of BK, there was no evidence corroborating the appellant's contention that Sgt C was even in the room, let alone that a consensual threesome was occurring. Third, Mr. S testified that when he and the appellant earlier saw Sgt C and BK having sex, in response to the

---

[11] *Id.* at 344

[12] *Id.*

[13] *Id.* at 261.

[14] *Id.*

[15] *Id.* at 317.

[16] *Id.* at 264.

[17] *Id.* at 270.

[18] "Incapable of consenting" means a person lacks either: 1) "the cognitive ability to appreciate the sexual conduct in question;" or 2) the physical or mental ability "to make and to communicate a decision" about whether he or she agrees to the conduct. *United States v. Pease*, 75 M.J. 180, 185 (C.A.A.F. 2016) (citing *United States v. Pease*, 74 MJ 763, 770 (N-M. Ct. Crim. App. 2015)).

appellant motioning that he wanted to join in, Sgt C specifically told him to go away.[19]

In spite of all the evidence to the contrary, the appellant testified that he never saw BK unconscious, slurring her words, or intoxicated to the point where she was unaware of her surroundings. To support this contention, the defense offered the testimony of a toxicologist who opined that high levels of alcohol consumption were required to induce unconsciousness. The expert was of limited utility, however, as he admitted he was unable to form an opinion of BK's blood-alcohol concentration at any specific time because no one knew, with certainty, the quantity or pace of BK's drinking.

Mr. and Mrs. S were credible. Mr. S was a friend of the appellant and a reluctant witness for the government, which added to the weight of his testimony against the appellant. Mrs. S was the most sober person of the five adults at the get-together.[20] As a result, in spite of any personal bias she may have had for BK due to their friendship, we accord her testimony more weight when resolving conflicts in testimony between witnesses. It is true that there were minor inconsistencies between Mr. and Mrs. S's testimony; however, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict. *Rankin,* 63 M.J. at 557. The crux is that both Mr. and Mrs. S saw the appellant having sexual intercourse with BK when she was incapable of consenting and causing her bodily harm.

After carefully reviewing the record of trial, and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found that the appellant sexually assaulted BK. Furthermore, after weighing all the evidence in the record of trial, and having made allowances for not having personally observed the witnesses, we are convinced beyond reasonable doubt of the appellant's guilt.

---

[19] Record at 422-23. Sgt C did not testify at the appellant's trial. He was convicted, contrary to his pleas, of wrongfully viewing "the private area of BK," in violation of Article 120c, UCMJ, 10 U.S.C. § 920c (2012). Staff Judge Advocate's Recommendation of 15 Mar 2016, Enclosure (3).

[20] Even if we believe Mrs. S drank some alcohol—as the appellant alleges—she was still, unequivocally, the most sober person present that night, and we find her testimony credible. *See United States v. Lepresti*, 52 M.J. 644, 648 (N-M. Ct. Crim. App. 1999) ("[F]actfinders may believe one part of a witness' testimony and disbelieve another. . . . So, too, may we.") (citations and internal quotation marks omitted).

## III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed.

Senior Judge MARKS and Judge FULTON concur.

For the Court

R.H. TROIDL
Clerk of Court